HANS J. LILJEBERG, Judge.
| {.Plaintiffs appeal a summary judgment granted in favor of defendant, Allstate Property and Casualty Insurance Company (“Allstate”), finding no uninsured/un-derinsured motorist (“UM”) coverage and *75 dismissing Allstate from this lawsuit. After a de novo review of this matter, we affirm. •

FACTS AND PROCEDURAL HISTORY

Plaintiffs, Julia Bonce and Marlon San-sotta, were involved in a motor vehicle accident on March 16, 2012, on North Causeway Boulevard in Jefferson Parish. Ms. Ponce was operating her 2004 Toyota Rav-4, with her son, Mr. Sansotta, as a guest passenger, when her vehicle was allegedly struck by an eighteen-wheeler, causing them to suffer personal injuries and other damages. On March 15, 2013, plaintiffs filed suit against several defendants, including Ms. |sPonee’s insurer, Allstate. Plaintiffs sought recovery from Allstate claiming that Ms. Ponce’s policy provided UM coverage for their damages.
On' November 7, 2013, Allstate filed a Motion for Summary Judgment, asserting that it had issued a policy of automobile liability insurance to Ms. Ponce that was. in effect at the time of the accident, but there was no UM coverage under this policy because it was. waived. In support of its position, Allstate submitted a copy of the Declarations Page for the automobile liability insurance policy, a copy of the “Uninsured/Underinsured Motorist Bodily Injury Coverage Form,” which indicated a rejection of UM coverage and was signed by Ms. Ponce, and an affidavit executed by an Allstate employee asserting that no insurance policies providing UM coverage-to Ms. Ponce were in'effect at the time of the accident.
In opposition to Allstate’s Motion for Summary Judgment, plaintiffs submitted a memorandum in which they asserted that Ms. Ponce’s waiver of UM coverage was invalid and thus, the policy provided UM coverage equal to the bodily injury liability limits, in accordance with La. R.S. 22:1295. In support of plaintiffs’ position, they submitted affidavits from-Ms. Ponce, in English and Spanish,- in which she indicated that her first language is Spanish and that she does not speak, read, or write the English language fluently.[1] In her affida.vits, Ms. Ponce further provided that she could not fully read and understand the documents presented for her signature when she obtained the Allstate policy, that she did not fully understand that she was rejecting UM coverage, and that the'Allstate agent directed her where to initial and sign on the “Uninsured/Underinsured Motorist Bodily Injury Coverage Form.”
|4After a hearing on April 3, 2014, the trial judge denied Allstate’s Motion for Summary Judgment.
On April 28,2015, Allstate filed a second Motion for Summary Judgment, again , asserting that the automobile liability insurance policy issued to Ms. Ponce did not provide UM coverage because such coverage was rejected by Ms. Ponce. It argued that, subsequent to -the hearing on Allstate’s first Motion for Summary Judgment, Ms. Ponce’s deposition was taken and provided supplemental grounds for the trial judge to find that there was no UM coverage under the Allstate policy at the time of the accident. In support of its position, Allstate submitted Ms. Ponce’s deposition, in which she stated that she has lived in the United States for 32 years, has been an American citizen for 20 years, *76 can converse in English, and has signed contracts and applied for jobs in English. In her deposition, Ms. Ponce further identified her signature and initials on the UM selection form and indicated that the agent explained what she had to sign on the UM selection form. She stated that everything had to be explained to her in order for her to sign the UM form.
After a hearing on June 5, 2015, the trial judge granted Allstate’s Motion for Summary Judgment and dismissed it from this lawsuit. Plaintiffs appeal.

LAW AND DISCUSSION

On appeal, plaintiffs contend that the trial judge erred by granting Allstate’s Motion for Summary Judgment. Plaintiffs assert that Ms. Ponce is not proficient in the English language and did not understand the UM selection form when she signed it. They also contend that she did not make a meaningful and informed selection from the available options for UM coverage, because the insurance agent made the selection for her and directed her where to initial and sign the form. Ms. Ponce further claims that the UM selection form was invalid, because her name was typed on the form by someone else and not printed by her. She claims that | abased on Louisiana Department of Insurance Bulletin No. 08-02, she was required to print her own name on the UM selection form.
A motion for summary judgment is a procedural device used when there is no genuine issue of material fact. La. C.C.P. art. 966; Flores v. Doe, 08-1259, p. 3 (La.App. 5 Cir. 6/23/09), 19 So.3d 1196, 1197, writ denied, 09-1628 (La.10/16/09), 19 So.3d 481. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of an action, and it is favored. La. C.C.P. art. 966(A)(2). Appellate courts review motions for summary judgment de novo, using the same criteria applied by the trial court, to determine whether any genuine issue of material fact exists and whether the mover is, entitled to- judgment as a matter of law. Richard v. Hall, 03-1488, ' p. 4 (La.4/23/04), 874 So.2d 131,137.
Under La. R.S. 22:1295, the requirement of UM coverage is an implied amendment to any automobile liability policy, even when not expressly addressed, as UM coverage will be read into the policy unless validly rejected. Garza v. Argueta, 12-561, p. 3 (La.App. 5 Cir. 3/27/13), 113 So.3d 384, 385. UM rejection may only be made on a form prescribed by the commissioner of insurance. La. R.S. 22:1295(l)(a)(ii). A “properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a.-lower limit, or selected economic-only coverage.” Id.; Dixon v. Direct Gen. Ins. Co., 08-907 (La.App. 1 Cir. 3/27/09), 12 So.3d 357, 361.
In the present case, in support of its Motion for Summary Judgment, Allstate submitted a completed UM selection form signed by Ms. Ponce and indicating a rejection of UM coverage. Thus, the burden shifted to plaintiffs to rebut the presumption that Ms. Ponce knowingly rejected UM coverage.
|fiIn her affidavit in support of the opposition to Allstate’s Motion for Summary Judgment, Ms. Ponce stated that her first language is Spanish and that she does not speak, read, or write the English language fluently. ^ She stated that, she could not read or fully. understand all of the documents presented to her for signing by the insurance agent when she obtained the Allstate policy. She further indicated that she did not understand that she was rejecting UM coverage and that she does not fully understand the function of UM coverage. Ms. Ponce stated that she did not *77 choose where to sign on the UM selection form, but rather was directed by the insurance agent where to initial and sign the form.
In support of her argument that her UM waiver was invalid, Ms. Ponce cites Duong v. Salas, 38,613 (La.App. 2 Cir. 6/23/04), 877 So.2d 269, writ denied, 04-1840 (La.10/29/04), 886 So.2d 690, in which the Second Circuit found that a waiver of UM coverage was invalid where the evidence showed that the insured could not adequately and fully read and understand English. However, the Duong case is clearly distinguishable from the present matter.
In Duong, the insured, who was from Vietnam, spoke little or no English and had only arrived in the United States five or six months before signing the UM selection form. In the case at hand, Ms. Ponce testified in her deposition that she has lived' in the United States for 32 years and has been an American citizen for 20 years. She can converse in English and can read some English. She also testified that she has signed leases, job applications, and other contracts that were written in English.
In Garza v. Argueta, 12-661 at 2, 113 So.3d at 386, the plaintiff sued his insurer seeking UM coverage for damages sustained in an accident, though he had executed a waiver of UM coverage when he purchased his insurance policy. Mr. Garza argued that the waiver of UM coverage was invalid because he did not 17knowingly reject coverage since he was “limited in his English” and did not understand what he was signing. Id. at 3-4, 113 So.3d at 386. The trial court granted summary judgment in favor of the insurer, finding no coverage pursuant to the UM waiver. This Court affirmed, noting that'Mr. Garza signed the waiver of UM coverage. Id. at 5, 113 So.3d at 386. Although Mr. Garza argued that Spanish was his first language and that he did not understand the waiver, this Court noted that an insured is presumed to know and understand what he is signing. Id. Mr. Garza did not allege fraud, duress, or misconduct by the insurance agent, and this Court found that he did not rebut the presumption that he validly waived UM coverage. Id. ■ ■
Similarly, in Pena v. Simeon, 11-1083, p. 9 (La.App. 6 Cir. 6/22/12), 96 So.3d 547, 551, the plaintiff asserted that she did not validly reject UM coverage, because she did not understand the form she signed since it was written in English and her native language was Spanish. This 'Court found that the plaintiff did not rebut the presumption that she knowingly rejected UM coverage, noting that the plaintiff spoke some English and did not indicate that she told the. insurance agent that she did not understand the forms or that she needed them to be explained to her in Spanish. Id. at 9-10, 96 So.3d at 552. This Court also noted that the plaintiff made no claim of fraud, duress, or misconduct by the insurance agent. Id.
Also, in Rizzo v. Ward, 09-1325 (La.App. 4 Cir. 2/24/10), 32 So.3d 986, 987, the plaintiff alleged that he did not validly execute a waiver of UM coverage because the form was written in English, and he did not speak or read English fluently. The Fourth Circuit rejected the plaintiffs argument and found the UM waiver to be valid. The Court noted that "the plaintiff was able to converse with the insurance agent in Spanish and could have asked questions if he did not understand, and he made no allegations of duress or misconduct by the insurance agent. Id. at 4, 32 So.3d at 988-989.
In the present case, Ms. Ponce testified that she has lived in the United States for 32 years and can converse in English. Although Ms. Ponce indicated that she cannot read much English, she stated that the *78 insurance agent explained what she had to sign and that “[f]or me to-have signed, he had to have explained everything to me.” Ms. Ponce did not testify that she told-the agent’ she did not understand any of the documents or that she needed any of the forms to be explained to her in Spanish. Further, Ms. Ponce did not allege fraud, duress, or misconduct by the insurance agent.
In the absence of fraud, duress, or misconduct by the insurance agent, an insured is presumed to know and understand what she is signing. Pena, 11-1083 at 10, 96 So.3d at 662; Detillier v. Borne, 16-129, p. 7 (La.App. 6 Cir. 9/23/16), 176 So.3d 669, 672, writ denied, 16-1901 (La.12/7/15). Considering the particular facts of this case, we find that plaintiffs did not present sufficient evidence to rebut the presumption that Ms. Ponce validly waived UM coverage or to show that any genuine issue of material fact exists.
Ms. Ponce also argues that the UM selection form indicating that she rejected UM coverage is invalid, because her name was typed on the form by someone else and she did not print her name on the form. She refers to Louisiana Department of Insurance-Bulletin No. 08-02 and claims that it required that she print her own name on the UM selection form. However, we do not believe the law requires that an insured print her own name on a. UM selection form in order for it to be valid.
lain Duncan v. U.S.A.A, Ins. Co., 06-363, pp. 11-12 (La.11/29/06), 950 So.2d 544, 551, the Louisiana Supreme Court set forth the following six tasks under the commissioner’s form that are required for a valid rejection of UM coverage:
1) initialing the selection or rejection of coverage chosen;
2) if limits lower than the policy limits are chosen (available in options 2 and
4), then filling in-the amount of coverage selected for each person and each accident;
3) printing the name of the named insured or legal representative;
4) signing the name of the named in-
’ sured or legal representative;
5) filling in the policy number; arid
6) filling in the date.
In Lynch v. Kennard, 09-282 (La.5/15/09), 12 So.3d 944, the plaintiff argued that a UM selection form was invalid because the insured’s secretary, not the insured himself, wrote the date on his UM selection form. The Louisiana Supreme Court found that the insúred’s’waiver of UM coverage was valid, noting that the form; on its face, was “properly completed,” and that a properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected UM coverage. The Court noted that the UM rejection form was signed by the named insured and the blank next to the option for rejecting UM coverage was initialed by the insured. The Court also mentioned that the insured’s name was typed on the form and the policy number was typed on the form, not written by the insured himself, but the form was found to be valid nonetheless.
Similarly, in Cortes-Valencia v. Crews, 14-234, p. 2 (La.App. 5 Cir. 10/29/14), 164 So.3d 204, 206, the plaintiff argued that her rejection of UM coverage was not valid because the date was generatéd electronically and not written by the insured herself. This Court found that “[t]he fact that the date on the form was generated in a manner other than hand-written by the insured herself is of | inno moment.” This Court stated that the insured, by executing the form with the date already on it, consented to the date and the manner by which it was placed on the form. Id. at 4, 164 So.3d at 207.
*79 In Dixon v. Direct Gen. Ins. Co., 08-907, p. 6 (La.App. 1 Cir. 3/27/09), 12 So.3d 357, 361, the plaintiff argued that his UM waiver was invalid because the form did not contain the insurance company’s name in the lower left-hand corner, as required by a bulletin issued by the Insurance Commissioner. The First Circuit found that because the six tasks outlined in Duncan were met, the UM form was valid and enforceable, even though it did not comply with the bulletin.
See also Garay-Lara v. Cornerstone Nat’l Ins. Co., 13-16, pp. 6-7 (La.App. 1 Cir. 5/2/14), 145 So.3d 423, 426, wherein the First Circuit stated that the fact that an insured’s ñamé and the date were typed on a UM selection form does not invalidate his selection thereon,
In the present case, the fact that Ms. Ponce’s name was typed on the form, not written by Ms. Ponce herself, does not invalidate the form. The UM selection form was explained to Ms. Ponce, and she signed the form and initialed next to the blank providing, “I do not want UMBI coverage.” We find that all six of the Duncan requirements were met, and Ms. Ponce has not rebutted the presumption that she validly waived UM coverage.
Considering the facts of this case, along with the applicable law, we agree with the trial court that Allstate was entitled to summary judgment, dismissing it from this lawsuit. Thus, we affirm the trial court’s judgment. .

DECREE

For the foregoing reasons, we affirm the summary judgment rendered in favor of Allstate, dismissing it from this ■ lawsuit.

AFFIRMED

. Although Ms. Ponce’s affidavits submitted with the opposition memorandum were not signed, plaintiffs submitted a signed and nota-' rized copy of each affidavit at the hearing on the Motion for Summary Judgment. Wé note that the trial judge stated that he does-toot read Spanish and.could not be certain that the English and Spanish affidavits contain the exact same information, but he admitted the affidavits into evidence after plaintiffs’ attorney certified “as an Officer of the Court” that the Spanish and English affidavits were the same.